**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CHRISTOPHER LABOMBARD,**

               **Plaintiff,**

  vs.                                            **8:14-cv-00071
                                                       (MAD/CFH)**

**BELINDA A. WINTERBOTTOM, Plan Administrator
for the Laborers' Pension Fund of Local Union No. 186;
LABORERS' PENSION FUND OF LOCAL UNION NO.
186,**

               **Defendants.**
_____

**APPEARANCES:**                                       **OF COUNSEL:**

**ROEMER, WALLENS LAW FIRM**          **MATTHEW J. KELLY, ESQ.**
13 Columbia Circle
Albany, New York 12203
Attorneys for Plaintiff

**SLEVIN, HART LAW FIRM -**               **OWEN MARC RUMELT, ESQ.**
**NEW YORK OFFICE**
614 Hempstead Gardens Drive
West Hempstead, New York 11552
Attorneys for Defendants

**SLEVIN, HART LAW FIRM -**               **PAUL E. KNUPP, ESQ.**
**DISTRICT OF COLUMBIA OFFICE**
1625 Massachusetts Avenue, N.W.
Suite 450
Washington, District of Columbia 20036
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Christopher LaBombard ("Plaintiff") commenced this action on January 22, 2014

under the Employee Retirement Income Security Act of 1974 ("ERISA"), alleging that he was

wrongfully denied benefits under the terms of a disability benefits plan (the "Plan") by

Defendants Belinda A. Winterbottom ("Winterbottom") and Laborers' Pension Fund of Local Union No. 186 (the "Fund"; collectively "Defendants"). *See* Dkt. No. 1.

Currently pending before the Court is Defendants' motion for summary judgment arguing that the denial of Plaintiff's benefits claim was not arbitrary and capricious. Dkt. No. 57. Plaintiff opposes this motion on the grounds that it is premature and that genuine questions of fact exist regarding Defendants' denial of Plaintiff's disability benefits. Dkt. Nos. 61-64.

## II. BACKGROUND

### A. Relevant Facts

Plaintiff was an enrolled member of Local Laborers' Union No. 186, Plattsburgh, New York (the "Union") starting in 1988. Dkt. No. 57-13 at ¶ 18. The Fund provides pension benefits to certain employees of the Union in accordance with the terms of the Plan in effect at the time the employee left employment in a job classification for which the employer was required to contribute to the Fund ("covered employment"). *Id.* at ¶¶ 1, 3. It is uncontested that Plaintiff was engaged in covered employment with the Union from 1988 to 2008. *See id.* at ¶ 18; Dkt. No. 57-6 at 4.

On February 8, 2013, Plaintiff submitted an application to the Fund for a disability pension resulting from injuries sustained in a car accident on November 13, 2012. Dkt. No. 57-6 at 2. In his application, Plaintiff stated that his last day of covered employment was November 13, 2012. *Id.* Plaintiff's application was denied on April 17, 2013 in a letter from Defendant Winterbottom stating that "[a] participant must be employed or actively seeking employment that would earn Pension or Vesting Service when the incident or illness that causes the disability occurs. According to our records, you last worked in covered employment in 2008 and your Social Security Award does not start until May 2013." Dkt. No. 57-7 at 2.

Plaintiff appealed this denial on May 9, 2013. *See* Dkt. No. 57-8. Plaintiff's appeal claimed that he was entitled to benefits because he "was a dues paying member of the [Fund] at all times in this matter" and that he was "at all times, ready, willing and able to appear for any jobs assigned by the Laborers' Union and was actively seeking employment [but] [n]one had been assigned since 2008." *Id.* at 4. Plaintiff submitted proof of his current dues payments through January 3, 2013 with his appeal letter. *Id.* at 8.

Defendant Winterbottom informed Plaintiff on August 6, 2013 that his appeal was denied

> based on the absence of any evidence that [Plaintiff] was actively seeking work during the period between his last date of covered employment in 2008 and the date he became disabled. It is the Trustees' understanding that [Plaintiff] was working as an operating engineer during this time and that he was not on the Union's out of work list when his disability began.

Dkt. No. 57-9 at 2. Working as an operating engineer is not considered covered employment for the Laborers' Union.

At the July 26, 2013 meeting in which Plaintiff's appeal was denied, union trustee Donald Anslow noted that he exchanged several greetings with Plaintiff from 2009-2012, observed that Plaintiff was working as an operating engineer, and that he believed Plaintiff had held such position since 2008. Dkt. No. 57-3 at ¶¶ 3, 5; Dkt. No. 66 at 4 ¶ 11. Plaintiff refutes this characterization and states that he only saw Mr. Anslow on two occasions and "advised him that [Plaintiff] was not working year round as an operating engineer." Dkt. No. 62 at ¶ 2. Mr. Anslow is a business agent for the Union and "regularly visit[s] job sites at which Union members [are] employed and observe[s] the work being performed at the job sites by employees in various trades, some of whom are employed in positions covered by other labor organizations' collective bargaining agreements." Dkt. No. 57-3 at ¶ 2.

3

Plaintiff contested the denial of his appeal in a letter to Defendant Winterbottom on August 29, 2013. *See* Dkt. No. 57-10. This letter stated that "[o]bviously, if [Plaintiff] was paying dues, he was available for work. The [Union] did not call him with any work during that time period." *Id.* at 2. Plaintiff requested from Defendant Winterbottom "any proof that [Plaintiff] was called for work and turned it down," and for "any and all written proof that [Plaintiff] was offered work between 2008 and 2012." *Id.* Thereafter, Defendant Winterbottom sent Plaintiff a letter on October 31, 2013 explaining the process for the Union's job referral procedure. Dkt. No. 57-11 at 2-8. The October 31 letter also included medical benefits waivers indicating that Plaintiff received health coverage through the Upstate New York Engineers Health Fund starting in February 2009. *Id.* at 2, 9-26.

The Union's job referral procedure requires employees to submit a referral form in order to be on the "out of work list" and be eligible for job referrals. *Id.* at 2. Plaintiff did not submit the referral form. *Id.* Rather, Plaintiff claims that he was told that "the process for obtaining work from the Laborer's Union is that you would call and just confirm you are on the out of work list. The secretary . . . never told me I had to fill out an out of work form." Dkt. No. 62 at ¶ 3.

**B.    Plan Provisions**

The Restated Agreement and Declaration of Trust that established the instant benefits Plan states that "the Trustees shall have full and exclusive authority to determine all questions of coverage and eligibility, methods of providing or arranging for benefits and all other related matters." Dkt. No. 57-4 at 27. In making benefits decisions, the Trustees may consider "any facts appearing in the records of the Trustees, any instruments on file with the Trustees, with the Union or with the Employers, any facts certified to the Trustees by the Union or the Employers, any

4

facts which are of public record and any other evidence pertinent to the issue involved." *Id.* at 30.

The Plan states that the an employee is entitled to disability pension on

> the first day of the month following his cessation of employment
> upon which all of the following conditions are met:
>     A. he is not yet age 55;
>     B. his completion of the 10 years of Vesting Service;
>     C. he is totally disabled;
>     D. when the incident or illness that caused his disability
>     occurred, he was employed or actively seeking employment
>     that would earn Pension or Vesting Service hereunder; and
>     E. he has submitted a proper application for pension
>     to the Trustees.

Dkt. No. 57-5 at 20. If an employee's disability claim is denied, the Trustees must provide the claimant with a written notice describing "[a] the specific reason(s) for the denial; [b] the specific reference(s) to the Plan provisions on which the denial is based; [c] the way(s) in which the claim might be perfected; and [d] a statement of the Plan appeal procedure." *Id.* at 40. Thereafter, "[t]he claimant . . . may appeal the denial of a claim by: submitting a written application to the Fund office or the Trustees . . . and, submitting such additional information and comments, in writing, as supports his or her appeal." *Id.* The final determination of the appeal is made by the Trustees. *Id.*

**C.**    **Procedural History**

Magistrate Judge Hummel issued a Decision and Order on March 18, 2015 ordering that Defendants' denial of Plaintiff's disability benefits application be reviewed under the arbitrary and capricious standard. Dkt. No. 51 at 5-8. The Court reviewed this Decision and Order and agrees with Magistrate Judge Hummel that the arbitrary and capricious standard applies to this case. Magistrate Judge Hummel also denied Defendants' motion to stay discovery. *Id.* at 14.

Specifically, the Decision and Order granted Plaintiff limited discovery including "document requests and a deposition of a representative to assess [Defendant] Winterbottom's role in his benefits determination and whether there existed a conflict of interest." *Id.* at 12. Further, "[P]laintiff [was] permitted discovery limited to document requests to determine 'what records the Fund relied upon in reaching its decision, whether that record is complete, or whether it had other records available to it from co-defendant Union.'" *Id.* at 14 (quoting Dkt. No. 44 at 9).

### III. DISCUSSION

**A.  Standard of Review**

*1. Summary Judgment Standard*

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(c), (e)). Further, "disputes over irrelevant facts must not be allowed to obscure the lack of a material dispute[.]" *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 923 (2d Cir. 1985).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the

motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

### 2. Rule 56(d)

The Second Circuit has stated:

> [a] party resisting summary judgment on the ground that it needs additional discovery in order to defeat the motion must submit an affidavit pursuant to Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)), showing: "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."

*Lunts v. Rochester City Sch. Dist.*, 515 Fed. Appx. 11, 13 (2d Cir. 2013) (quoting *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995)). Pursuant to Rule 56(d), if a party opposing a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d).

Rule 56(d) "is a safeguard against premature grants of summary judgment and should be applied with a spirit of liberality." *Holmes v. Lorch*, 329 F. Supp. 2d 516, 529 (S.D.N.Y. 2004) (quotation omitted); *see also Delphi–Delco Elecs. Sys. v. M/V NEDLLOYD EUROPA*, 324 F. Supp. 2d 403, 417–18 (S.D.N.Y. 2004). This is especially true where a party has not had an

opportunity to conduct full discovery. The nonmoving party should not be "railroaded" into his offer of proof in opposition to summary judgment. *Delphi–Delco Elecs. Sys.*, 324 F. Supp. 2d at 421 (citation omitted). The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment. *See id.* (citation omitted); *see also Anderson*, 477 U.S. at 250. Since Rule 56(d) "is an important safeguard against improvident or premature motions for summary judgment, courts generally avoid overly technical rulings under this subdivision and apply it with a spirit of liberality." *Delphi–Delco Elecs. Sys.*, 324 F. Supp. 2d at 417-18 (citations omitted). "Thus, while failure to file an affidavit meeting the foregoing requirements is sufficient grounds to reject a claim that the opportunity for discovery was inadequate, it is not automatically fatal to such a request." *Id.* (citations omitted); *cf. Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) ("A reference to Rule 56[d] and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit").

Rule 56(d) "will not be liberally applied to aid parties who have been lazy or dilatory." *Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 948 F. Supp. 285, 294 (S.D.N.Y. 1996) (quoting 10A Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2740, 535 (2d ed. 1983)). Thus, requests for additional discovery

> by a party who has diligently used the time available . . . should be given more favorable consideration than claims by one who has allowed months to pass unused. . . . A party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need.

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927-28 (2d Cir. 1985).

### *3. Arbitrary and Capricious Standard Under ERISA*

In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Moreover, to avoid *de novo* review, a plan must "give some unambiguous indication that discretion has been conferred." *Shapiro v. New York Univ.*, 640 F. Supp. 2d 411, 419 (S.D.N.Y. 2009) (citing *Kosakow v. New Rochelle Radiology Assoc., P.C.*, 274 F.3d 706, 739 (2d Cir. 2001)). Finally, if a plan administrator has the responsibility of both evaluating and paying benefit claims, it "creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make *de novo* review appropriate." *Giles v. AT&T, Inc.*, No. 6:09-CV-293, 2012 WL 398990, *9 (N.D.N.Y. Feb. 7, 2012) (quoting *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82-83 (2d Cir. 2009)) (other citation omitted).

When discretionary authority has been granted and *de novo* review is not appropriate, "[t]he court may reverse only if [the plan administrator's] decision was arbitrary and capricious[.]" *Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir. 1995). A plan administrator's decision is arbitrary and capricious when it is "without reason, unsupported by substantial evidence, or erroneous as a matter of law." *Id.* (citation omitted). In determining whether a plan administrator's decision is supported by "substantial evidence," courts consider whether there was "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator.]" *Giles*, 2012 WL 398990, at *9 (quoting *Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 146 (2d Cir. 2003)). Although there must be more than a

9

"scintilla" of evidence to support the plan administrator's decision, the amount of evidence required to be considered adequate does not rise to the level of preponderance. *See Miller*, 72 F.3d at 1072. "This scope of review is narrow, thus [courts] are not free to substitute [their] own judgment for that of the [plan administrator] as if [they] were considering the issue of eligibility anew." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995) (citation omitted). Ultimately "a district court's review under the arbitrary and capricious standard is limited to the administrative record." *Miller*, 72 F.3d at 1071.

**B.    Rule 56(d) Request for Additional Discovery**

Plaintiff's opposition to the instant motion argues that he "is unable to fully contest the issues brought up in this matter because [he] has not had the opportunity to have that limited discovery [granted by Magistrate Judge Hummel's March 18, 2015 order]." Dkt. No. 63 at ¶ 5. Plaintiff's only support for this contention is that he "will seek to have depositions of those people who have made declarations in this case, Belinda A. Winterbottom and Donald Anslow, as well as people the [P]laintiff communicated with at the Union office." *Id.* Plaintiff argues that the instant motion contravenes Magistrate Judge Hummel's grant of limited discovery and that the "Court should summarily deny the motion and direct that the [D]efendants comply with the provisions of the Order of the Magistrate." Dkt. No. 64 at 1. Plaintiff's opposition makes no mention of Rule 56(d), nor has he submitted the required affidavits explaining his need for additional discovery. *See generally* Dkt. Nos. 62-64. While this failure alone is sufficient to deny Plaintiff's objection to the instant motion, *see Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994), further deficiencies in Plaintiff's request for additional discovery support the Court considering Defendants' motion for summary judgment without further delay.

Magistrate Judge Hummel's order granting limited discovery did not set any required time for such discovery, nor did it explicitly preclude either party from moving for summary judgment prior to completion of such discovery. *See* Dkt. No. 51 at 10-14. Further, Magistrate Judge Hummel was informed of Defendants' intention to move for summary judgment on May 20, 2015 and did not indicate that such motion was inappropriate at that time. *See generally* Dkt. Nos. 53, 56. Therefore, the instant motion does not contravene Magistrate Judge Hummel's March 18, 2015 limited discovery order.

Plaintiff made no attempt at discovery during the more than two month period between being granted limited discovery and the filing of the instant motion. Despite being informed on May 20, 2015 of Defendants' intention to move for summary judgment, Plaintiff still did not make any discovery requests nor did he ask the Court for additional time to complete such discovery prior to Defendants' filing of the instant motion. Significantly, Plaintiff does not discuss why he was unable to conduct any discovery or why he failed to seek additional time for discovery after receiving notice of Defendants' intention to move for summary judgment. *See* Dkt. Nos. 53-56; *see also Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 948 F. Supp. 285, 295 (S.D.N.Y. 1996) (denying a party's objection to summary judgment under Rule 56(d) because the party failed to file an affidavit in support of its objection, did not explain why it had not commenced discovery, and failed to utilize available discovery even after having actual notice of the opposition's intention to move for summary judgment).

Defendants' supporting papers to the instant motion adequately address any alleged need for Plaintiff's additional discovery. Plaintiff was granted limited discovery pertaining to Defendant Winterbottom's potential conflict of interest and to determine which records the Fund relied upon in denying Plaintiff's benefits application. Dkt. No. 51 at 12, 14. Plaintiff claims that

11

Defendants were acting under a conflict of interest because Defendant Winterbottom "not only made the initial decision on Plaintiff's pension application, but also appears to have reviewed her own decision on appeal." Dkt. No. 44 at 9. However, Defendant Winterbottom's declaration clarifies that "[a]s benefit claim appeals are determined solely by the Board of Trustees[,] I played no role in the decision on [Plaintiff's] appeal." Dkt. No. 57-2 at ¶ 19. Plaintiff's other ground for additional discovery[1] was because "it is unclear what records the Fund relied upon in reaching its decision, whether that record is complete or whether it had other records available to it from co-defendant Union." Dkt. No. 44 at 9. Defendants have presented all documents that the Trustees considered on Plaintiff's appeal. Dkt. No. 57-2 at ¶ 24; Dkt. No. 57-12. These documents, combined with trustee Donald Anslow's testimony, constitute the entire administrative record for Plaintiff's appeal. Dkt. No. 57-2 at ¶ 24; Dkt. No. 57-3 at ¶¶ 5, 6; Dkt. No. 66 at 4, ¶ 11. Plaintiff makes no argument that Defendants' proof on these issues is insufficient. While he states that he intends to depose Ms. Winterbottom and Mr. Anslow, Plaintiff provides no explanation of what specific facts he expects to discover nor "how those facts are reasonably expected to create a genuine issue of material fact[.]" *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995) (citation omitted); Dkt. No. 63 at ¶ 5. For the foregoing reasons, the Court denies Plaintiff's request to deny Defendants' motion pending additional discovery.

**C.    The Denial of Plaintiff's Disability Application**

   *1. Plaintiff's Initial Benefits Application*

---

[1] These two specific reasons that Plaintiff requested additional discovery were presented in his opposition to Defendants' previous motion to stay discovery, which Magistrate Judge Hummel has already considered. No new arguments for additional discovery were made in Plaintiff's opposition to the instant motion.

The relevant information in Plaintiff's initial disability benefits application included a form on which he stated that his last day of active covered employment was November 13, 2012, a pension plan calculation worksheet, a list of Plaintiff's employment hours in covered employment from 1988 until 2008, and a letter from the Social Security Administration stating that Plaintiff was entitled to social security benefits beginning in May 2013. Dkt. No. 57-6 at 2-4, 6.

Despite Plaintiff's application claiming that his last day of covered employment was November 13, 2012, Defendant Winterbottom determined that Plaintiff "last worked in covered employment in 2008[.]" Dkt. No. 57-7 at 2. This determination was based upon the records submitted with Plaintiff's application that showed he had not engaged in work that was credited toward his covered employment pension since 2008. *Id.* at 3. Further, Plaintiff has since acknowledged that he was last employed in covered employment in 2008. Dkt. No. 57-13 at ¶¶ 18, 19; Dkt. No. 61 at ¶¶ 18, 19. In the absence of any other documentation submitted by Plaintiff, Defendant Winterbottom denied his application because "[a] participant must be employed or actively seeking [covered] employment . . . when the incident or illness that causes the disability occurs." Dkt. No. 57-7 at 2.

Defendant Winterbottom's denial of Plaintiff's application was supported by substantial evidence by relying on the Fund's records of Plaintiff's covered employment status. *Id.* at 3. Further, the decision was not clearly erroneous or contrary to the plain language of the Plan that requires applicants to show that they were "employed or actively seeking employment that would earn Pension or Vesting Service" at the time their disability began. Dkt. No. 57-5 at 20; *see Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 486 (2d Cir. 2013) (quotation omitted) ("[W]here the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a

13

manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious"). Consistent with the Plan provisions, Defendant Winterbottom's April 17, 2013 denial letter included the basis for denying Plaintiff's application and outlined the process for him to seek an appeal of this determination. Dkt. No. 57-7 at 2. Therefore, Defendant Winterbottom's denial of Plaintiff's initial disability application was not arbitrary and capricious.

### *2. Plaintiff's Appeal*

The complete record before the Trustees when they denied Plaintiff's appeal at their July 26, 2013 meeting included several documents, Plaintiff's statements in his appeal letter, and the testimony of trustee Donald Anslow. *See* Dkt. No. 57-12; Dkt. No. 57-2 at ¶ 24. The relevant documents included Plaintiff's original disability benefits application, a list of Plaintiff's employment hours in covered employment from 1988 until 2008, a letter from Aprell Goodwyn stating that Plaintiff "left covered employment in 2008," Plaintiff's initial denial letter for his disability benefits application, Plaintiff's appeal letter, and a receipt of Plaintiff's up to date union dues as of January 3, 2013. Dkt. No. 57-12 at 4, 6, 12, 13, 17, 21. Plaintiff stated in his appeal letter that he "was a dues paying member of the Laborers' Pension Fund at all times in this matter[,]" and that he "was at all times, ready, willing and able to appear for any jobs assigned by the Laborers' Union and was actively seeking employment." *Id.* at 17. During the appeal hearing, Mr. Anslow "noted [his] personal observations of [Plaintiff] working as an operating engineer and [his] belief that [Plaintiff] had maintained regular full-time employment as an operating engineer since ending Covered Employment as a laborer in 2008." Dkt. No. 57-3 at ¶ 5. Mr. Anslow also noted that he was not "aware of [Plaintiff] ever having contacted the Union to ask for a referral[,]" and that "to the best of [his] knowledge, [Plaintiff] had never complied with the Union's

14

procedures for obtaining employment as a laborer, since he had not completed and submitted the Union's referral form[.]" *Id.* at ¶ 6.

The Trustees fully considered everything that Plaintiff submitted in support of his appeal and found that the limited evidence did not prove that he was actively seeking work in covered employment. *Id.* at ¶ 9. The Trustees' decision to disregard certain evidence presented by Plaintiff was not without reason. *See Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995) ("[W]e may overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law") (quotation omitted). The Trustees "did not consider it relevant that [Plaintiff] maintained his Union membership while working in non-covered employment" because it is "common for Union members to maintain their membership during periods of non-employment . . . to avoid paying the Union's mandatory $500 initiation fee if they later seek covered employment as a laborer." Dkt. No. 57-3 at ¶ 8. Further, Plaintiff's statement that he was "willing and able to appear for any jobs assigned by the Laborers' Union and was actively seeking employment" was insufficient, without any further evidence, to prove that he was actively seeking work in covered employment at the time he became disabled. *Id.* at ¶ 7; *see Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 212 (2d Cir. 2015) (citing *Juliano v. Health Maint. Org.*, 221 F.3d 279, 287-88 (2d Cir. 2000)) (explaining that an ERISA claimant bears the burden of establishing his entitlement to benefits).

After the Trustees determined that Plaintiff failed to carry his burden to submit "such additional information and comments, in writing, as supports his [] appeal[,]" they reasonably relied upon the statements of Mr. Anslow at the meeting to deny Plaintiff's appeal. Dkt. No. 57-5 at 40. Relying on such testimony by a fellow trustee is not improper in a hearing on disability benefits. *See VanWright v. First Unum Life Ins. Co.*, 740 F. Supp. 2d 397, 404 (S.D.N.Y. 2010)

15

("An ERISA plan administrator is not a court and is not bound by the rules of evidence") (quotation omitted); *see also* Dkt. No. 57-4 at 30 (Trustees may consider "any other evidence pertinent to the issue involved"). Mr. Anslow's statements that Plaintiff was engaged in other work and not seeking covered employment, coupled with Plaintiff's absence from the Union's out of work referral list, illustrates that the Trustees' denial of Plaintiff's appeal was based upon substantial evidence.

Plaintiff's contention that he merely needed to call and confirm that he was on the out of work list, rather than submitting actual paperwork, is irrelevant because review of this decision is limited to the administrative record. *See* Dkt. No. 62 at ¶ 3; *see also Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). This argument should have been raised to the Trustees on Plaintiff's appeal so that it could have been included in the administrative record. Further, Plaintiff's assertion that Mr. Anslow's statement to the Trustees was false has no bearing on the instant determination. *See* Dkt. No. 62 at ¶ 2. Mr. Anslow's description of Plaintiff's working status at the appeal hearing was based upon his observations made while performing his duties as a business agent. Dkt. No. 57-3 at ¶¶ 2, 5, 6. Plaintiff acknowledges that he saw Mr. Anslow on at least one occasion while working as an operating engineer. Dkt. No. 62 at ¶ 2. Moreover, the Trustees had no reason to distrust Mr. Anslow's statements during the hearing on Plaintiff's appeal. Therefore, the Court cannot conclude that Mr. Anslow's representations at the appeal meeting were so flawed as to make the Trustees' decision arbitrary and capricious. *See Magee v. Metro. Life Ins. Co.*, 632 F. Supp. 2d 308, 320 (S.D.N.Y. 2009) (holding that a decision is arbitrary and capricious if administrators relied on evidence that they knew or should have known was flawed) (citing *Buffonage v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 30 (1st Cir. 2005)). Lastly, Plaintiff's contention that "there is no basis for turning down this appeal" unless

Defendants produced "proof that [Plaintiff] was called for work and turned it down" is misplaced as the burden to produce evidence establishing his entitlement to benefits is on Plaintiff and not Defendants. *See Roganti*, 786 F.3d at 212. Thus, Defendants' denial of Plaintiff's disability benefit appeal was not arbitrary and capricious and the Court grants Defendants' motion for summary judgment.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of this Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 5, 2015
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge